UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

CARL E. ARMSTRONG,

    Plaintiff,

v.                                        Case No. 04-C-0884

CHARLES G. BRANN,
SGT. WILLIAM OAKLEY,
DEPUTY SITTE, AND
DEPUTY SHORTREED,

    Defendants.

# ORDER

The plaintiff, Carl E. Armstrong, lodged this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. On December 6, 2004, he was permitted to proceed *in forma pauperis* on Eighth Amendment and state law negligence claims. This matter comes before the court upon the defendants' motion for summary judgment.

**FACTUAL BACKGROUND**

On September 15, 2005, the plaintiff lodged a civil rights complaint against Charles G. Brann, William Oakley, Deputy Sitte and Deputy Shortreed. The complaint was subsequently screened and the plaintiff was permitted to proceed on a claim that defendants Oakley, Sitte, and Shortreed subjected him to extreme temperatures in violation of the Eighth Amendment. In addition, the court found that the plaintiff stated a negligence claim against defendant Brann for failing to maintain the jail in a safe and humane condition.

On June 2, 2005, the defendants filed a motion for summary judgment. However, on October 14, 2005, their motion was denied for failing to provide the plaintiff with the summary judgment notice statement required under Civil L.R. 56.1 The defendants then filed a renewed motion for summary judgment on October 20, 2005. The plaintiff filed his response to the defendants' motion on November 10, 2005.

**1.     Preliminary Matters**

The defendants assert that all of their proposed findings of fact should be considered undisputed because the plaintiff has done nothing to controvert the material facts they have presented. (Defendants' Reply Brief in Support of Mot. for Summary Judgment at 3). Specifically, the defendants maintain that the plaintiff has submitted no admissible evidence to support his claims that he was subjected to extremely cold temperatures. *Id.*

At summary judgment, the facts at issue must be established through documents that ensure reliability and veracity, such as depositions, answers to interrogatories, admissions and affidavits. *Martz v. Union Labor Life Ins. Co.*, 757 F.2d 135, 138 (7th Cir. 1985). If a filing is sworn, it will be treated as an affidavit at the summary judgment stage. *Ford v. Wilson*, 90 F.3d 245, 246 (7th Cir. 1996). Submissions which are unverified and unsworn cannot be considered affidavits for the purposes of summary judgment motions because these documents would not be admissible at trial. *See* Fed. R. Civ. P. 56 (c) and (e).

In this case, the plaintiff has not submitted any supporting affidavits to rebut the defendants' proposed findings of fact. The only sworn document he has filed is a copy of a June 17, 2003, grievance he submitted to the Door County Jail Administrator.[1] Because this document meets the requirements of Fed. R. Civ. P. 56, it may be admitted at summary judgment. However, the plaintiff's remaining documents (the complaint and his response to the defendants' motion for summary judgment) are unsworn and will not be considered as evidence at the summary judgment stage because they would not be admissible at trial.

**2.   Standard for Summary Judgment**

Summary judgment is required "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The mere existence of some factual dispute does not defeat a summary judgment motion; "the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). For a dispute to be genuine, the evidence must be such that a "reasonable jury could return a verdict for the nonmoving party." *Id*. For the fact to be material, it must relate to a dispute that "might affect the outcome of the suit." *Id*.

---

[1] The plaintiff's June 17, 2003, grievance has not been labeled with a page number or an exhibit number. In the interest of clarity, the court will refer to it as "Pl.'s Ex. 1."

Although summary judgment is a useful tool for isolating and terminating factually unsupported claims, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986), courts should act with caution in granting summary judgment, *Anderson*, 477 U.S. at 255. When the evidence presented shows a dispute over facts that might affect the outcome of the suit under governing law, summary judgment must be denied. *Id*. at 248.

The moving party bears the initial burden of demonstrating that he is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 323. Where the moving party seeks summary judgment on the ground that there is an absence of evidence to support the nonmoving party's case, the moving party may satisfy its initial burden simply by pointing out the absence of evidence. *Id.* at 325. Once this initial burden is met, the nonmoving party must "go beyond the pleadings" and designate specific facts to support each element of the cause of action, showing a genuine issue for trial. *Id.* at 323-24. Neither party may rest on mere allegations or denials in the pleadings, Anderson, 477 U.S. at 248, or on conclusory statements in affidavits, *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1572 (1989).

In evaluating a motion for summary judgment, the court must draw all inferences in a light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, it is "not required to draw every conceivable inference from the record - only those inferences that are reasonable." *Bank Leumi Le-Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir. 1991).

**3.    Relevant Undisputed Facts**

The plaintiff was incarcerated at the Door County Jail ("the jail") at all times relevant. (Complaint [Compl.] at 2). Defendant Charles G. Brann is the Sheriff of Door County. *Id.* Defendant William Oakley is a sergeant and the administrator of the jail. (Affidavit of William Oakley [Oakley Aff.] ¶ 2). Defendant Robert Sitte is a deputy with the Door County Sheriff's Department. (Affidavit of Robert Sitte [Sitte Aff.] ¶ 2). Defendant Shortreed (whose first name is unknown), is also employed as a deputy with the Door County Sheriff's Department. (Compl. at 2).[2]

If there is a problem with either or both boilers, McCartney is notified and he is responsible for fixing the problem. (McCartney Aff. ¶ 5). McCartney reviewed the records pertaining to the operation of the boiler on November 29, 2002. *Id.* On that date, an alarm went off indicating that boiler number two had malfunctioned. *Id.* The malfunction occurred at approximately 2:15 a.m. *Id.* However, the remaining boiler was not affected by the malfunction and it sufficiently heated the jail. *Id.* Had both boilers malfunctioned, McCartney would have been notified. *Id.* He does not recall any such failure. *Id.* Further, no records exist indicating that both boilers failed on November 29, 2002. *Id.*

On November 29, 2002, the plaintiff was housed in one of the jail's four containment cells. (Oakley Aff. ¶ 4). He had been placed in a containment cell to serve a "punitive segregation" sentence which had been imposed because he refused to follow orders. (Compl. at 2; Oakley Aff. Ex. 41). Like all other inmates at the jail, plaintiff was clothed in undergarments, a tee shirt and an orange jumpsuit. (Sitte Aff. ¶ 3; Pl.'s Depo. at 14:12-25 - 15:1-9).

---

[2]Although defendant Oakley is the jail administrator, defendants Sitte and Shortreed were responsible for the administration of the jail when the alleged wrongdoing occurred. (Sitte Aff. ¶ 3).

Inmates in segregation are not allowed to have a blanket or mattress during the day. (Pl.s' Depo. at 30:15-21). Pursuant to jail policy, inmates in segregation are issued blankets and mattresses between the hours of 9:00p.m. and 10:00p.m., after the general population has been closed down. (Pl.'s March 23, 2005, Deposition [Pl.'s Depo.] at 14:12-21; 30:7-14; 36:3-6).

On the evening of November 29, 2002, the plaintiff asked for a blanket several hours before the normal time that blankets were issued. (Pl.'s Depo. at 31:23 - 32:9). It is unclear what time the plaintiff lodged his request. (Pl.'s Depo. at 34:10-36:6). However, he is certain that he requested a blanket during the evening hours. (Pl.'s Depo. at 35:4-17).

The plaintiff's request for a blanket was denied. (Pl.'s Depo. at 33:25 - 34:18). However, he was subsequently provided with a blanket after the general population was closed down at approximately 10:00p.m. (Sitte Aff. ¶ 6).

The plaintiff's containment cell did not have any windows and it was not located on an outside wall. (Oakley Aff. ¶ 5). There was a radiant heat register located within 8 feet of his cell. (McCartney Aff. ¶ 6). It is the same type of register that is used to heat other parts of the jail, including general population and the offices of the prison officials. *Id.*

The plaintiff had a metal chrome sink and a commode with running water in his cell. (Pl.'s Depo. at 36:25-38:3). During the evening of November 29, 2002, no frost of any kind formed on the chrome sink or on the commode. *Id.*

The plaintiff's claim concerns the time period between when he asked for the blanket and when he received a blanket. (Pl.'s Depo. at 36:3-6). His only challenge to the conditions of his confinement is that he was exposed to extremely cold temperatures.

(Pl.s' Depo. at 21:16-22:10). He had no problem with the jail food, cleanliness, rodents or pests. *Id.*

On the evening of November 29, 2002, two of the three adjacent containment cells were occupied. (Oakley Aff. ¶ 5). One of the inmates in these cells was given a blanket before 10:00p.m. (Sitte Aff. ¶ 6). The parties are in dispute as to why this inmate received a blanket ahead of schedule. (See Pl.'s Ex. 1; Sitte Aff. ¶ 6). The plaintiff avers that it was because the inmate complained of being cold. (Pl.'s Ex. 1). The defendants maintain that this inmate was given a blanket because his tooth had been pulled and he needed something to prop his head on. (Sitte Aff. ¶ 6).

In addition to this inmate, another inmate was housed in a cell adjacent to the plaintiff. *Id.* It is undisputed that this inmate never complained of being cold and he did not request a blanket. *Id.*

In his position as jail administrator, defendant Oakley is responsible for overseeing the record keeping of all inmates, including records concerning the conditions of their confinement. (Oakley Aff. ¶ 3). Defendant Oakley reviewed the file that was compiled during the plaintiff's incarceration at the jail. *Id.* There is no record indicating that the plaintiff requested any medical treatment or that he made a medical complaint of any nature concerning extremely cold conditions. *Id.*

Ted McCartney, who is not a named defendant in this action, is the building maintenance manager for the jail. (Affidavit of Ted McCartney [McCartney Aff.] ¶ 4). In his duties as building maintenance manger, McCartney is in charge of maintaining the boiler system that heats the jail. *Id.* The jail has two boilers but only one boiler at a time is necessary to heat the entire jail. *Id.* Each day, one boiler is designated as primary and

-7-
Case 2:04-cv-00884-JPS    Filed 09/25/06    Page 7 of 12    Document 34

one is designated as secondary. *Id.* In the event there is a problem with the primary boiler, the secondary boiler will automatically turn on to consistently heat the jail. *Id.*

## DISCUSSION

**A.    Defendants Sitte and Shortreed**

The plaintiff claims that Sitte and Shortreed violated the Eighth Amendment when they refused to give him a blanket on the evening of November 29, 2002. (Compl. at 4). The Eighth Amendment proscribes cruel and unusual punishment in cases of official conduct which is not part of the formal penalty for a crime if a plaintiff demonstrates: (1) a "sufficiently serious" deprivation and, (2) that officials acted with a "sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 299 (1991). Mechanical rules are not to be employed in determining whether an alleged deprivation violates the Eighth Amendment. *Rhodes v. Chapman*, 452 U.S. 337, 346-47 (1981). However, "only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson*, 501 U.S. at 298 (quoting *Rhodes*, 452 U.S. at 347). Conditions that create "temporary inconveniences and discomforts" are insufficient to state an Eighth Amendment claim. *Adams v. Pate*, 445 F.2d 105, 108-09 (7th Cir. 1971).

The Eighth Amendment's prohibition against cruel and unusual punishment imposes upon prison officials the duty to provide inmates adequate shelter, including protection from extreme cold. *Dixon v. Godinez*, 114 F.3d 640, 642 (7th Cir. 1997). To assess whether cold cell temperatures constitute cruel and unusual punishment, courts must consider factors including "the severity of the cold; its duration; whether the prisoner has alternative means to protect himself from the cold; the adequacy of such alternative; as well as whether he must endure other uncomfortable conditions as well as cold." *Id.*

at 644. The cold need not present an imminent threat to the inmate's health to implicate the Eighth Amendment. *Id.* at 642.

The plaintiff claims that he was exposed to extremely cold temperatures for several hours on the night of November 29, 2002. He has not disputed the defendants' affidavit that the jail is kept between 65 and 68 degrees, and never less than 60 degrees. Nor has he contradicted the defendants' evidence that his cell had no windows, was not located on an outside wall, there was a heating register less than 8 feet away and no frost ever formed on the cell's metal sink or commode. Based on the foregoing, it does not appear that the cold temperatures in the plaintiff's cell, in isolation, constitute a sufficiently serious deprivation. *See Higgason v. Farley,* 2001 U.S. App. LEXIS 26470 (7th Cir. Nov. 26, 2001)(inmate's claim that he was subjected to "extremely cold and damp" temperatures over six day period insufficient to establish a sufficiently serious deprivation where he failed to rebut evidence that his cell was maintained at a "proper temperature."). However, because the severity of the temperature in the plaintiff's cell is but one factor to consider in determining whether a constitutional violation has occurred, the court will address whether other factors posed a sufficiently serious deprivation.

With respect to the duration of the deprivation, it is undisputed that the plaintiff first requested a blanket sometime during the evening hours of November 29, 2002. Although his request was denied, he was provided with a blanket at approximately 10:00 p.m. when bedding was issued to inmates in segregation. As to the presence of any other uncomfortable conditions, the plaintiff stated that his only problem with his conditions of confinement was exposure to extremely cold temperatures. He had no issue with the jail food or cleanliness and he was not exposed to rodents or pests.

In *Godinez*, 114 F.3d at 641, the plaintiff alleged that the defendant prison officials violated his Eighth Amendment right to adequate shelter when they subjected him to bitterly cold temperatures. Because there was evidence that water froze on the cell walls, temperatures in the cell block were below freezing, the cold prevented the plaintiff from performing tasks such writing a letter, and the conditions went unchanged for four winters, the Court of Appeals for the Seventh Circuit held that the district court's entry of summary judgment was improper. *Id.* at 643-44.

In contrast to the plaintiff in *Godinez*, the plaintiff in the present case has submitted no evidence to support his claim that he was subjected to extremely cold temperatures.[3] Specifically, he has not provided any evidence showing what temperature his cell was on the evening of November 29, 2002. Further, he has not alleged that water froze in his cell or that frost appeared on metal objects. Finally, he concedes that he was exposed to the allegedly cold temperatures for a matter of hours, and not years.

Based on the foregoing, the plaintiff has failed to demonstrate that he suffered a sufficiently serious deprivation. Thus, it is unnecessary to address whether the defendants acted with a sufficiently culpable state of mind. *See Wilson,* 501 U.S. at 299. Accordingly, summary judgment will be granted as to the plaintiff's claims against defendants Sitte and Shortreed.

---

[3] The court notes that the plaintiff has alleged that his feet hurt as a result of the extremely cold temperatures, that he could see his breath and that another inmate was provided with a blanket after complaining that he was cold. As noted, the plaintiff has offered no admissible evidence in support of these contentions. "It is well-settled that conclusory allegations...without support in the record, do not create a triable issue of fact." *Hall v. Bodine Elec. Co.*, 276 F.3d 345, 354 (7th Cir. 2002)(citing *Patterson v. Chi. Ass'n for Retarded Citizens*, 150 F.3d 719, 724 (7th Cir. 1998)).

**B.     Defendant Oakley**

The plaintiff avers that defendant Oakley refused to intervene and provide him with a blanket after defendants Sitte and Shortreed denied his requests. (Compl. at 4-5). However, the plaintiff fails to state facts indicating Oakley's direct, personal involvement, as required by *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). Nor has the plaintiff provided any facts showing that the alleged violation of his constitutional rights occurred at Oakley's direction or with his knowledge and consent. *Id*. "Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation." *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996). Moreover, the doctrine of respondeat superior (supervisory liability) does not apply to actions filed under 42 U.S.C. § 1983. *See Pacelli v. DeVito*, 972 F.2d 871, 877 (7th Cir. 1992). Section 1983 does not create collective or vicarious responsibility. *Id*. Accordingly, defendant Oakley will be dismissed from this action.

**C.     Defendant Brann**

The plaintiff avers that defendant Brann failed to maintain the jail in a safe and humane condition. (Compl. at 5). Wisconsin courts utilize a four-element process in analyzing claims of negligence. *Paul v. Skemp*, 625 N.W.2d 860, 865 (Wis. 2001). To prevail on a state negligence claim, the plaintiff must prove the following: (1) a breach of; (2) a duty owed; (3) that results in; (4) injury or injuries, or damages. *Id*.

Assuming that defendant Brann did owe the plaintiff a duty of care, the plaintiff has failed to point to any facts indicating that Brann breached this duty. Specifically, the record reveals that the jail employed two boilers. When the first one broke down on the night of November 29, 2002, the remaining boiler switched on and adequately heated the

jail. The temperature in the jail was between 65 and 68 degrees, and never lower than 60. In addition, the plaintiff concedes that he had no problems with the jail's food and level of cleanliness, nor was he exposed to any rodents or pests. The court cannot envision how circumstances such as these amount to a breach of Brann's duty to provide the plaintiff with a safe and humane living environment.

Further, the plaintiff has submitted no admissible evidence that he suffered any injury as a result of the first boiler breaking down. He has alleged that his feet were cold for several days after the incident, but he has submitted no evidence to support this proposition. Moreover, the plaintiff never requested medical care for any injuries related to exposure to cold. Based on this, the court is not persuaded that the plaintiff has met his burden of showing that he suffered any injury as a result of defendant Brann's alleged wrongdoing. Therefore, the entry of summary judgment is appropriate as to defendant Brann.

Accordingly,

**IT IS ORDERED** that the defendants' motion for summary judgment (Doc. #20) be and the same is hereby **GRANTED.** The case is dismissed on its merits together with costs as taxed by the clerk of the court.

The clerk is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin this   25th   day of September, 2006

BY THE COURT:

 s/ J. P. Stadtmueller
J. P. Stadtmueller
U.S. District Court